UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

KEVIN SADLER,                                                    Plaintiffs
JUDE EDELEN, AND
MICHAEL KRIMM

v.                                          Civil Action No. 3:17-CV-328-RGJ-CHL

GENERAL ELECTRIC COMPANY                                        Defendant.

* * * * *

## MEMORANDUM OPINION AND ORDER

Defendant, General Electric Company ("GE" or the "Company") moved to compel arbitration ("Motion") [DE 24]. The parties fully briefed the motion. [DE 30; DE 34]. The Court granted GE's motion as to Plaintiff, Jude Edelen ("Edelen"), but denied GE's motion as to Plaintiffs Kevin Sadler ("Sadler"), and Michael Krimm ("Krimm")(collectively "Plaintiffs"). [DE 43]. The Court granted Plaintiffs' request for an evidentiary hearing [DE 30; DE 43] and held an evidentiary hearing regarding Sadler and Krimm. [DE 70, Hrg. Trans.]. The parties filed proposed findings of fact and conclusions of law. [DE 73, DE 74]. The parties then filed responses. [DE 75, DE 76]. The matter is ripe. For the reasons below, the Court compels Sadler and Krimm to arbitrate their claims.

## I. BACKGROUND

The Court held an evidentiary hearing to determine whether Sadler and Krimm agreed to "Solutions," a GE alternative dispute resolution procedure. [DE 43, DE 70 Dec. 15, 2020 Hearing Transcript ("Trans.")]. The Court heard testimony from Judy Bidwell ("Bidwell"), Senior Director of Human Resources for the technology organization at GE Appliances, Plaintiff Sadler, and,

1

Plaintiff Krimm. [DE 70]. Since the beginning of this litigation and through the evidentiary hearing, both parties believed Kentucky law controlled the arbitration agreement and argued Kentucky law in their briefs. Plaintiffs raised for the first time in post-hearing briefs that the arbitration agreement contains a choice of laws provision that requires New York law. [DE 74 at 445]. GE does not dispute that the choice of law provision is valid and that New York law applies. [DE 75].

## II. FINDINGS OF FACT

Sadler and Krimm worked for GE Home and Appliances division as lab technicians. [DE 70 at 54, 76]. Sadler has been with GE since 1992. [DE 70 at 379]. GE has employed Krimm since 1987. [DE 70 at 76]. GE employed Sadler and Krimm in the Appliance Division, part of GE's Consumer & Industrial Division. [DE 70 at 358-59]. In 2010, GE's Consumer & Industrial Division became known as GE Home & Business Solutions. [DE 70, Exh. 3, Appx. A, p. 24].

Since 1998, GE has had an alternative dispute resolution policy that has applied to various segments of its business and various individuals. [DE 70 at 352:15-24; Exh. 1]. In 2009, GE expanded its alternative dispute resolution policy known as "Solutions" to apply to more employees. [DE 70 at 359, Exh. 4, Email from Greg Capito]. Solutions provides a four-step process for a "formal and quick and fair and efficient review" of an employee's concern. *Id.* The fourth step of the Solutions policy requires arbitration of any claims or disputes. [DE 70 at 352]. Solutions states that "Covered Employees and the Company are not allowed to litigate a Covered Claim in any court," except for preliminary injunctions or temporary restraining orders. [DE 70, Exh. 4 at 7]. Under the agreement, parties must follow the procedure laid out in Solutions, which includes arbitration, and mutually binds both GE and the covered employees. *Id.*

General Electric required employees to agree to Solutions as a condition of continued employment, as with its other policies such as workplace violence policy, Code of Conduct, invention policy on proprietary information, sexual harassment prevention training policies, and conflict of interest policies. [DE 70 at 362-64].

In April 2009, Greg Capito, General Electric's Vice-President of Human Resources for its Consumer & Industrial Division, sent an email announcing that General Electric was expanding Solutions to apply to all "non-represented" employees, that is, employees who were not members of General Electric's unionized workforce. [DE 70, Exh. 3].  Capito advised that an email would issue to all participating employees directing them to access the online "myLearning" Solutions training. [DE 70 at 356, 358, Exh. 3].

General Electric requires employees to review and acknowledge new policies through an online system known as the Learning Management System. [DE 70 at 360]. The Learning Management System is a portal where new policies and updated policies are published and where online trainings about those policies are housed. [DE 70 at 360, 397-98, 414-15]. GE assigns trainings and policy acknowledgements in the Learning Management System to employees and the employees then receive an email notification directing them to log in to the Learning Management System to complete the training, acknowledge the policy, or both. [DE 70 at 360, 399-400]. To access materials in the Learning Management System, employees must log in with their unique employee identification number and their individualized password. [DE 70 at 360-61]. Employees set their own private passwords. [DE 70 at 360, 399-400].

The 2009 Solutions applied to various different employees and for purposes of this matter it applied to the following:

GE Consumer & Industrial

All GE Consumer & Industrial employees in Senior Professional band positions and below who are classified by the Company as exempt, and non-exempt salaried employees, who are either working in the United States or who are U.S. citizens working outside the United States are covered by this Solutions procedure effective July 1, 2009, with the exception of the following categories of employees who will continue to be covered by the GE Consumer & Industrial alternative dispute resolution program applicable to their employment: (1) GE Consumer & Industrial hourly employees who were employed by GE Consumer & Industrial  prior to November 30, 2008;  (2) employees in Senior Professional band and below positions who were employed by the Company prior to December 1, 2008, and who (a) are notified in writing, by the Company, that the employee can opt out of Solutions between April 29, 2009 and June 30, 2009 and; (b) do opt out of Solutions pursuant to the Company's procedures between April 29, 2009 and June 30, 2009.

[DE 70, Exh. 2 2009 Solutions Policy, Appx. A]. The 2009 Solutions Policy applied to "[a]ll GE Consumer & Industrial employees in Senior Professional band positions and below who are classified by the Company as exempt, and non-exempt salaried employees" and it was "effective July 1, 2009." But the 2009 Solutions Policy did not apply to certain "hourly employees." It also did not apply to employees in "Senior Professional band and below positions" who GE notified in writing by the company that the employee can opt out between certain dates and does in fact opt out during those dates.

The 2009 Solutions Policy has a "Governing Law" provision which states: "[t]his Agreement shall be construed, interpreted and applied in accordance with the law of the State of New York, without regard to choice of law principles." [DE 70, Exh. 2, 2009 Solutions Policy at 10]. The 2009 Solutions Policy states in relevant part:

Entire Agreement

This procedure constitutes the sole agreement between the Company and its employees concerning the requirements of Solutions and may not be modified by written or oral statements of any Company representative except as set forth in Section II.C above.  If there are conflicts between the requirements of this procedure and other Company policies, procedures, publications or statements by

4

Company representatives regarding matters addressed by this procedure, the requirements of this procedure control.

[DE 70, Exh. 2, 2009 Solutions Policy at 3].

In 2010, GE's Consumer & Industrial Division became known as GE Home & Business Solutions. [DE 70, Exh. 3, Appx. A at 24]. The 2010 version of Solutions applies for purposes of this matter as follows:

GE Home & Business Solutions

All GE Home & Business Solutions employees* in Senior Professional band positions and below who are classified by the Company as exempt, non-exempt salaried, and all non-represented hourly employees, who are either working in the United States or who are U.S. citizens working outside the United States are covered by this Solutions procedure effective on the date of their acknowledgement of the program. All former GE Consumer & Industrial employees and employees formerly with GE Enterprise Solutions in the Intelligent Platforms business, remain covered by Solutions. The following categories of employees will continue to be covered by the former GE Consumer & Industrial Alternative Dispute Resolution Program applicable to their employment: (1) former GE Consumer & Industrial hourly employees who were employed by GE Consumer & Industrial prior to November 30, 2008; (2) employees in Senior Professional band and below positions who were employed by the Company prior to December 1, 2008, and who (a) are notified in writing, by the Company, that the employee can opt out of Solutions between April 29, 2009 and June 30, 2009 and; (b) do opt out of Solutions pursuant to the Company's procedures between April 29, 2009 and June 30, 2009.

*Except for those employees who opted out of Solutions in 2009.

[DE 70, Exh. 4 2010 Solutions Policy at Appx A]. The 2010 Solutions Policy applied to "[a]ll GE Home & Business Solutions employees* in Senior Professional band positions and below who are classified by the Company as exempt, and non-exempt salaried employees" but rather than being effective on an express date, it was "effective on the date of their acknowledgement of the program." As with the previous policy, the 2010 Solutions Policy did not apply to certain "hourly employees." It also did not apply to employees in "Senior Professional ban and below positions"

5

who were notified in writing by the company that the employee can opt out between certain dates and does in fact opt out during those dates.

The 2010 Solutions Policy has a "Governing Law" provision which states: "[t]his Agreement shall be construed, interpreted and applied in accordance with the law of the State of New York, without regard to choice of law principles." [DE 70, Exh. 4 2010 Solutions Policy at 10]. The 2010 Solutions Policy states:

Entire Agreement

This procedure constitutes the sole agreement between the Company and its employees concerning the requirements of Solutions and may not be modified by written or oral statements of any Company representative except as set forth in Section II.C above. If there are conflicts between the requirements of this procedure and other Company policies, procedures, publications or statements by Company representatives regarding matters addressed by this procedure, the requirements of this procedure control.

[DE 70, Exh. 4, 2010 Solutions Policy at 3].

GE directed employees at Appliance Park to acknowledge Solutions through the Learning Management System. [DE 70 at 351, Exh. 3]. GE made Solutions available to all employees through GE's intranet along with other Human Resources policies and information. [DE 70 at 366-67].

GE classified Plaintiffs Sadler and Krimm as non-exempt salaried employees. [DE 70 at 351, 379-80, 384, 387-88]. Sadler and Krimm are not members of the labor union. [DE 70 at 393-94, 414]. They do not clock in or clock out, but work from an office setting in a lab and work as needed to complete their assignments. [DE 79 at 384, 413].

GE's records show that Sadler completed the Solutions training on August 26, 2009. [DE 70 at 403-04, Exh. 5 Sadler Learning Management Systems history]. Sadler does not recall completing this training. *Id.* But Sadler does recall receiving email notifications about training and

completing various training through the GE Learning Management System, using his unique employee identification number and password to access trainings. [DE 398-400, 403-04].

GE does not have records that show that Krimm completed the Solutions training. Krimm recalls receiving emails about training and completing trainings online through the GE Learning Management System, but does not recall completing any specific training, including training on alternative dispute resolution. [DE 70 at 415-420]. Krimm described these trainings as, "push a button, get the video going. You can go over and read a book while the video's playing and then when the video's done you click and say 'I did it'. . . It depends on whether you want to sit there and do it or not." [DE 70 at 417]. Krimm continued working for GE after 2009 and remains employed with GE's successor company GE Appliances, a Haier Company. [DE 70 at 412]. Before her testimony, Bidwell review GE documents as to how many lab technicians had reviewed and acknowledged Solutions before Appliance Park was sold to Haier. [DE 70 at 371]. GE's reporting documents show that of 50 lab technicians, 47 had acknowledged Solutions. *Id.* at 372. Krimm was one of the three that did not appear to have acknowledged solutions.

### III. CONCLUSIONS OF LAW

Whether the parties entered into an arbitration agreement is controlled by state contract law. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). GE's choice of laws provision provides the agreement will be controlled by New York law. The parties agree on this point. Thus, the Court will apply New York law.

Under New York principles of contract law, the party seeking to compel arbitration bears the burden of proving a valid arbitration agreement by a preponderance of the evidence. *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional de Venezuela*, 991 F.2d 42, 46 (2d Cir. 1993). Once the moving party has met that burden, the party challenging an agreement must make

"an unequivocal denial that the agreement had been made . . . and some evidence should [be] produced to substantiate the denial." *Interocean Shipping Co. v. Nat'l Shipping & Trading Corp*., 462 F.2d 673, 676 (2d Cir. 1972) (citation omitted). *See also, Barrows v. Brinker Rest. Corp*., No. 519-CV-144GLSATB, 2020 WL 1511077, at *2 (N.D.N.Y. Mar. 30, 2020) (citing *Denney v. BDO Seidman, L.L.*P., 412 F.3d 58, 67–68 (2d Cir. 2005)).

The Court's previous ruling that Solutions is supported by sufficient consideration does not change just because New York law governs the agreement. As under Kentucky law, New York courts find that continued employment constitutes sufficient consideration to render an arbitration agreement binding where the arbitration agreement is mutually binding. *See Graham v. Command Sec. Corp*., 46 Misc. 3d 1224(A), 13 N.Y.S.3d 850 (N.Y. Sup. 2014); *see also See Hellenic Lines, Ltd. v. Louis Dreyfus Corp.,* 372 F.2d 753, 758 (2d Cir.1967) (holding that a party's "promise to arbitrate was sufficient consideration to support [the other party's] promise to arbitrate"); *Teah v. Macy's Inc.,* No. 11–CV–1356, 2011 WL 6838151, at *5 (E.D.N.Y. Dec. 29, 2011) ("There is clearly adequate consideration for the arbitration agreement, as it binds both parties to arbitrate their claims, and formed part of a valid employment agreement."); *Meyer v. Starwood Hotels & Resorts Worldwide, Inc.,* No. 00–CV–8339, 2001 WL 396447, at *1 (S.D.N.Y. Apr. 18, 2001) ("[In] a contract to arbitrate disputes respecting employment . . . the mutually binding nature of the arbitration clause constitutes valid consideration."). The Court's previous ruling [DE 43] about Edelen thus remains.

As for Sadler and Krimm, the issue is whether they received Solutions. Under New York law, continued employment alone, without anymore, is enough to manifest assent to a modification of the terms of employment. *Manigault v. Macy's E., LLC,* 318 F. App'x 6, 8 (2d Cir. 2009) citing *Bottini v. Lewis & Judge Co.,* 211 A.D.2d 1006, 621 N.Y.S.2d 753, 754 (1995); *see also Hanlon*

*v. Macfadden Publ'ns, Inc*., 302 N.Y. 502, 505–06, 99 N.E.2d 546 (1951); *Waldman v. Englishtown Sportswear, Ltd*., 92 A.D.2d 833, 460 N.Y.S.2d 552, 555 (1983).

GE has shown by a preponderance of the evidence that both Sadler and Krimm received Solutions. Bidwell testified about how GE communicated Solutions to employees. Bidwell testified that GE announced in 2009 that Solutions would apply to all employees who were not members of GE's union and that all participating employees would receive an email directing them to access the online learning system to complete training on Solutions. [DE 70 at 359-60]. GE assigns trainings and policy acknowledgements in the online learning system to employees and employees then receive an email notification directing them to log in to the online learning system to complete the training, acknowledge the policy, or both. [DE 70 at 360, 399-400]. GE directed employees at Appliance Park to acknowledge Solutions through the online learning system. [DE 70 at 357]. Solutions was also accessible on GE's intranet. [DE 70 at 366].

Sadler received Solutions and completed online training on Solutions on August 26, 2009. [DE 70 at 369-71, 403-04, Exh. 5]. Sadler continued to work for GE. [DE 70 at 389]. Sadler's inability to recall this training does change this outcome. *See Daniels v. Aaron's, Inc*., No. 19-CV-6421 (CJS), 2020 WL 5810018, at *5 (W.D.N.Y. Sept. 30, 2020) ("under New York law, Daniels' failure to recall signing the arbitration agreement does not absolve him from his contractual obligations, or necessarily create a triable issue of fact" where employer provided sworn declaration of human resources manager, thoroughly explaining the process for the arbitration agreement, and employee electronically signed an acknowledgment of same). GE has established by a preponderance of the evidence that Sadler received notice of Solutions. It is undisputed GE continued to employee Sadler after notifying him of Solutions. Sadler is thus subject to the arbitration agreement.

Krimm says he never had training in dispute resolution. [DE 70 at 420]. Krimm is familiar with the online learning system and received emails about required online trainings. [DE 70 at 414-17].   Krimm testified that he completed various trainings online. *Id.*   Krimm does not recall the specifics of any trainings. *Id.*   He testified that "you just watch a video . . . most but a lot of its not even interactive. You can just push a button, get the video going. You can go over an reach a book while the video's playing and then when the video's done you can click and say 'I did it' or if there's question s and you think that you can get through it, you don't have to sit there and watch the video, so, I mean, it's – you know, training or whatever." *Id.* at 417.   Krimm was employed by GE for six or seven years after GE implemented Solutions. [DE 70 at 412].

The Court finds Krimm's assertion that he did not receive notice of Solutions unsupported by the evidence, insufficient to raise a genuine issue material fact, and without merit. *Brown v. St. Paul Travelers Companies, Inc.*, 331 F. App'x 68, 70 (2d Cir. 2009) ("[w]e agree with the District Court that '[p]laintiff's statement, that she has no recollection or record of receiving the employee handbook and arbitration policy, despite the fact that it was distributed on at least six occasions during her employment, is . . . not sufficient to raise a genuine issue of material fact.'"). GE provided testimony about how Solutions was communicated to its employees. Krimm has completed various online trainings but could not recall any details on any training he has completed. GE has shown by a preponderance of the evidence that Krimm was on notice of Solutions. And under New York law, whether or not Krimm completed the online training, his continued employment was enough to acknowledge and accept a modification to the terms of his employment. Accordingly, the Court finds that Krimm is subject to the arbitration agreement.

Finally, Sadler and Krimm do not fall into either of the exceptions to Solutions. As to the exception for "hourly employees," GE provided credible testimony that GE classified Sadler and

Krimm as non-exempt salaried employees, to which Solutions applies. [DE 70 at 351, 379-80, 384, 387-88]. Sadler and Krimm are not members of the labor union. [DE 70 at 393-94, 414]. They work from an office setting in a lab, do not clock in or clock out, and work as needed to complete their assignments. [DE 79 at 384, 413]. Sadler and Krimm offer no persuasive argument that they were "hourly employees."

Nor do Plaintiffs offer any argument or evidence that the second exception applies. The second exception applies to certain employees that are notified by GE in writing that he or she can opt out of Solutions. And those employees must opt out during a specified timeframe. There is no evidence that GE notified either Sadler or Krimm in writing that they could opt out of Solutions, nor is there proof that either Sadler or Krimm did in fact opt out of Solutions between April 29, 2009 and June 30, 2009. The second exemption does not apply.

### IV. CONCLUSION

For the reasons set forth above, it is **ORDERED** as follows:

1. The parties are **compelled to submit to arbitration** in accordance with the parties' arbitration agreement.

2. This matter is **dismissed without prejudice**.

3. The Court will enter a **separate judgment** consistent with this memorandum opinion & order